OSCAR L. RICHARD and Others, as Surviving Partners of the Firm of C. B. RICHARD & COMPANY, Appellants, Respondents, v. AMERICAN UNION BANK, Respondent, Appellant.

First Department, April 19, 1929.

*Walter H. Pollak* of counsel [*J. Charles Weschler* and *Ruth I. Wilson* with him on the brief; *Weschler & Kohn*, attorneys], for the plaintiffs.

*Edwin T. Murdoch* of counsel [*Frederick T. Kelsey* with him on the brief; *Lewis, Garvin & Kelsey*, attorneys], for the defendant.

MERRELL, J. Two causes of action are set forth in the plaintiffs' complaint. In the first cause of action the plaintiff seeks to recover the sum of $72,755, besides interest, for moneys paid by the plaintiffs to the defendant's predecessor, the Nemeth State Bank, for the purpose of purchasing 2,000,000 lei (Rumanian currency) and to transfer said 2,000,000 lei by cable to a banking house in Bucharest, Rumania, and place said lei to the plaintiffs' credit. It is alleged in the complaint that the plaintiffs were copartners in business engaged in buying and selling foreign exchange; that the defendant's predecessor, Nemeth State Bank, on November 14, 1919, was a domestic corporation organized and existing under the banking laws of the State of New York, also engaged in buying and selling foreign exchange. Plaintiffs allege that at the city of New York on said November 14, 1919, the Nemeth State Bank entered into two agreements with plaintiffs whereby the said bank, in consideration of the said sum of $72,755 then paid to it by plaintiffs, sold to plaintiffs 2,000,000 lei in currency of Rumania to be transferred to the banking house of Marmorosch, Blank & Co. in Bucharest, Rumania, for plaintiffs' account, on or before November 17, 1919, and that said Nemeth State Bank would establish a cable transfer of said 2,000,000 lei on or before said November 17, 1919, with said banking house at Bucharest, Rumania, so that on said last-mentioned date plaintiffs' account at said Rumanian bank would be credited with said lei and the same should be available to the plaintiffs in their foreign exchange business. Plaintiffs further allege that said sum of $72,755 paid to the Nemeth State Bank on November 14, 1919, for the purpose of purchasing said 2,000,000 lei, was the market value of said lei on said day. Plaintiffs further allege that the said bank failed and neglected to establish or effect said credit in favor of plaintiffs, either by cable or otherwise, and wholly failed and neglected to perform its said contract with the plaintiffs. It is further alleged in the complaint that prior to March 3, 1921, the defendant purchased and acquired all the assets and property of the Nemeth State Bank and assumed and undertook and agreed to pay all of said bank's obligations and assumed all of the obligations imposed by the contracts and agreements of said bank, including the obligations arising from its said contract with plaintiffs, and that

said defendant received the said moneys paid by plaintiffs to the Nemeth State Bank. Plaintiffs further allege that on April 4, 1921, plaintiffs having learned that the defendant had not established said credit and had failed in all respects to perform said contract, demanded of the defendant the return of the consideration paid as aforesaid, with interest thereon, and that thereafter and on May 27, 1921, without the knowledge or consent of plaintiffs, defendant purchased 2,000,000 lei and directed the said banking house at Bucharest, Rumania, to credit the amount thereof to the account of the plaintiffs; that at that time the market price of said 2,000,000 lei was the sum of $33,800, and that the said 2,000,000 lei were purchased by defendant for said last-mentioned sum of money. Plaintiffs further allege that they were first informed by the Rumanian banking house with whom said lei were to be deposited of the receipt of said 2,000,000 lei on August 17, 1921, and that at that time said 2,000,000 lei were of the market value of $24,440, and that on said last-mentioned day a cable transfer in favor of plaintiffs with said bank at Bucharest was procurable at said sum; that said lei were not available to the plaintiffs until said date. Plaintiffs further allege that on the said last-mentioned date the plaintiffs notified defendant that they would not accept the 2,000,000 lei, except at the market price of May 27, 1921, and canceled the said contracts and demanded that the defendant refund to plaintiffs the sum of $72,755, with interest thereon from November 14, 1919; that the defendant failed and refused to accept such proposition and refused to pay to plaintiffs the said sum of $72,755 and interest or any part thereof.

In the second cause of action set forth in the plaintiffs' complaint the plaintiffs allege that on February 4, 1920, the plaintiffs and the said Nemeth State Bank entered into an agreement whereby said bank, in consideration of the sum of $8,802.50 to be paid to it by plaintiffs on February 9, 1920, sold to plaintiffs 1,000,000 Jugo kronen, being the currency of the country of Jugoslavia, to be transferred by cable to Vienna Bank Verein at Agram in Jugoslavia for the account of the plaintiffs on or before February 9, 1920, and that it was agreed that the Nemeth State Bank would establish a cable transfer of said 1,000,000 kronen on or before February 9, 1920, with the said Vienna Bank Verein so that plaintiffs' account at said bank would be credited not later than that day with the said 1,000,000 kronen, and that the same would be available to the plaintiffs in their foreign exchange business. Plaintiffs further allege in their second cause of action that the defendants' predecessor, Nemeth State Bank, failed and neglected to transfer said kronen to said Vienna Bank Verein and did not purchase

a transfer of said kronen by cable or otherwise, but converted and disposed of said sum of $8,802.50 to defendant's use; that on March 3, 1921, without the knowledge or consent of plaintiffs, defendant purchased 1,000,000 kronen and caused the same, on or about March 8, 1921, to be transferred by cable to the Vienna Bank Verein for plaintiffs' account, and that at that time the market price of said 1,000,000 kronen was $6,802.50; that on November 23, 1921, the plaintiffs were informed by the bank of Vienna Bank Verein of the receipt of said 1,000,000 kronen, and that on said day 1,000,000 kronen were of the market value of $3,050.50; that thereupon and on said day the plaintiffs notified the defendant that they would not accept said 1,000,000 kronen, except at the value of said kronen on February 9, 1920; that the defendant refused to accept such proposition of the plaintiffs and on December 15, 1921, the plaintiffs declined to accept such 1,000,000 kronen and demanded of the defendant repayment of said sum of $8,802.50, together with interest from February 9, 1920, which sum the defendant has failed and refused to pay, and has paid no part thereof.

In the amended answer of the defendant six separate defenses are set forth and alleged as to each of the two causes of action set forth in the plaintiffs' complaint. In the first separate defense alleged in said answer the defendant alleges that plaintiffs' causes of action are barred by a prior action brought for the same relief wherein the complaint was held as insufficient in law and was dismissed, and which dismissal was affirmed by the Court of Appeals (210 App. Div. 22; 241 N. Y. 163).

The second separate defense to plaintiffs' cause of action was that the same were barred by the six years' Statute of Limitations.

The third separate defense alleged that the credits of foreign currency were in fact accepted by each of the foreign banks for plaintiffs' account and were not returned to defendant.

In the fourth separate defense the defendant alleges that the foreign currency credits thus accepted have been disbursed by the foreign banks at plaintiffs' direction and for plaintiffs' account.

In the fifth separate defense the defendant alleges that the foreign banks were acting as the plaintiffs' agents in accepting the deposits which were made and in crediting plaintiffs' accounts therewith.

The sixth separate defense is based upon an alleged implied condition in the agreements between the plaintiffs and defendant's predecessor that the plaintiffs should promptly verify the statements received from their foreign banks and notify defendant's predecessor at once of any failure to effectuate the agreed credits,

and that plaintiffs, after knowing of the Nemeth State Bank's defaults, failed to give such notices.

I think the court below very properly held the first and second defenses were insufficient in law. There is no allegation contained in the first alleged separate defense that the judgment in the prior action was upon the merits. A copy of the complaint in the prior action is annexed to the answer of the defendant. Said complaint was dismissed for insufficiency. (*Richard* v. *American Union Bank*, 241 N. Y. 163, affg. 210 App. Div. 22.) Section 482 of the Civil Practice Act provides that " a final judgment dismissing the complaint, before the close of the plaintiff's evidence, does not prevent a new action for the same cause of action, unless it expressly declares that it is rendered upon the merits." As before stated, there is no allegation in the first defense that the judgment dismissing the complaint in the prior action was upon the merits. It very clearly appears that the merits of the litigation were in nowise involved upon such dismissal. The dismissal was because of the failure of the plaintiffs to allege facts sufficient to constitute a cause of action. An examination of the prior complaint very clearly shows that it was entirely different from the complaint now before the court. The prior complaint was dismissed, not upon the merits, but because of failure to allege a proper basis for damage. The basis for damage alleged in the present complaint was the loss sustained by plaintiffs by reason of the depressed value of the commodity sold, namely, the lei and the kronen above mentioned. The prior judgment which the defendant seeks in its first defense to set up as a bar was merely for formal defects in the complaint not affecting the merits of the action. Such judgment was not a bar to the present action. (*Stowell* v. *Chamberlain*, 60 N. Y. 272, 277.) In the present complaint the plaintiffs fully set forth the facts which were absent in the first complaint and which, I think, clearly constitute a cause of action. I, therefore, think the court was entirely correct in holding the first separate defense insufficient in law. Likewise, I think the court correctly held the second defense, that the cause of action was barred by the six years' Statute of Limitations, was bad. The complaint was finally dismissed upon the rendition by the Court of Appeals on October 20, 1925, of its decision. Before the expiration of the year from that date the present action was commenced. Section 23 of the Civil Practice Act provides: " If an action is commenced within the time limited therefor, and a judgment therein is reversed on appeal without awarding a new trial, or the action is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a

final judgment upon the merits, the plaintiff, or, if he dies and the cause of action survives, his representative, may commence a new action for the same cause after the expiration of the time so limited and within one year after such a reversal or termination."

In computing the time within which a new action must be brought, a prior action is deemed terminated when the judgment of dismissal of the complaint was affirmed by the Court of Appeals. (*Wooster* v. *42nd Street, etc., R. R. Co.*, 71 N. Y. 471, 473.) In that case Judge ANDREWS, writing for the Court of Appeals, said: " We think the statute, by a reasonable interpretation, gives him the right to bring the new action within a year after the affirmance in this court. It was the final reversal of the judgment originally rendered.  *  *  * It would be an inconvenient construction to hold that the plaintiff, in a case like this, must bring a second action while the appeal to this court in the first action is pending, in order to save his cause of action from being barred by the statute."

The third defense alleged in the answer is to the effect that the Rumanian bank and the bank in Jugoslavia had received transmission of the foreign moneys and accepted them for the plaintiffs' account, and that credits had not been returned to the defendant. It is thus claimed by defendant that the delay of a year and a half in the transmission of the lei to Rumania and of over a year in the transmission of the kronen to the Vienna Bank Verein, and the failure of the plaintiff to return the credits in said banking institutions to the defendant, constitute a defense. It very clearly appears therefrom that there was so great a delay in point of time as to each transfer as to render performance a nullity. In each case the contract specifically fixed the time when delivery of the lei and of the kronen should be made, and the plaintiffs had a right, when delivery was not made on the contract date, to refuse to accept the credit as of a later date. (*Mawhinney* v. *Millbrook Woolen Mills*, 234 N. Y. 244, 249; *Richard* v. *American Union Bank*, 241 id. 163, 168.) Plaintiffs had a right to recover the purchase price which it paid to establish said credits. (*Richard* v. *Credit Suisse*, 242 N. Y. 346.)

The fourth defense alleged in the answer to the effect that delayed performance was accepted, is, I think, clearly insufficient in view of the fact that in accepting a late performance the plaintiffs expressly reserved the right to damages for the delayed delivery. While such acceptance might operate as a partial defense to the recovery by plaintiffs of the full amount of money advanced for the lei and for the kronen, it cannot defeat plaintiffs' claim for loss through depreciation of the currency by reason of delayed delivery, the plaintiffs making prompt claim for such loss. The defense is

not alleged as a partial defense to plaintiffs' cause of action, but is alleged as a complete defense thereto and as such is clearly insufficient. (*Houston* v. *Coombs*, 224 App. Div. 396; *Root Co.* v. *N. Y. C., etc., R. R. Co.*, 166 id. 137.)

Likewise, the fifth defense was, I think, insufficient. In such defense it is alleged that in each of the agreements set forth in the complaint the foreign bank was designated as plaintiffs' agent to receive, accept and place to the credit of their account with said bank the foreign currency purchased, and that the bank in each case acting as plaintiffs' agent failed to comply or to effect said credit, and that the agent later on, after the stipulated time for performance, had accepted the .currency in question. It was held in *Richard* v. *Credit Suisse* (*supra*) that the mere transmission of instructions to a foreign correspondent was not performance of the contract, and that performance could not be effected until payment had actually been made. To the same effect was the decision of the Special Term in *Kupfer Bros. Co.* v. *Chemical National Bank* (126 Misc. 13; affd., 216 App. Div. 796).

The sixth defense alleged in the answer is also, to my mind, clearly insufficient. It is therein alleged that there was an implied condition in the contracts that the plaintiffs should notify the defendant of the delay of defendant's correspondents. There was no such condition whatever contained in the contracts, and I do not think such a condition should be read into said contracts. The allegation of the implied condition is not an allegation of fact, but a mere legal conclusion of the pleader. (*Streat Coal Co., Inc.*, v. *Frankfort Gen. Ins. Co.*, 237 N. Y. 60, 67, 68.) By the sixth defense the defendant attempts to put upon the plaintiffs the burden of notifying the seller of the foreign exchange of the seller's own default. I do not see any such obligation on the part of the plaintiffs. The seller in this case was clearly in default, and the plaintiffs were not required to notify the seller of such default.

The order appealed from should be modified by striking from the answer the third, fourth, fifth and sixth defenses to the plaintiffs' complaint, and as so modified the order appealed from should be affirmed, with ten dollars costs and disbursements to the plaintiffs, appellants.

DOWLING, P. J., MARTIN, O'MALLEY and PROSKAUER, JJ., concur.

Order modified as indicated in opinion, and as so modified affirmed, with ten dollars costs and disbursements to plaintiffs.