THE EQUITABLE TRUST COMPANY OF NEW YORK, Appellant, *v.* CHARLES A. KEENE, Respondent.

**Contract — foreign exchange — Statute of Frauds — when agreement for transfer of exchange by cable not a sale of existing right or credit but a contract for future action and, therefore, not within Statute of Frauds.**

1. If an agreement to deliver or make a cable transfer of foreign exchange be regarded as a sale of or a contract to sell an existing credit it comes within the Statute of Frauds and must be evidenced

by a memorandum in writing, whereas if it is an agreement to create for the person named a credit for a certain amount of foreign money, it is a contract which does not come within the requirements of such statute and may be made by word of mouth and without written memorandum.

2. A complaint in an action to enforce an agreement for the transfer by cable of an amount of foreign exchange alleged that the parties " entered into an agreement wherein and whereby plaintiff agreed to deliver to defendant and defendant agreed to take from plaintiff a cable transfer of exchange on London, England, in the amount of twenty thousand pounds sterling " and that under the .term " cable transfer of exchange," " the person contracting to deliver such exchange " contracts " that he will make available by cable to a person contracting to take such exchange a credit of the amount specified at the point specified and at the time specified." *Held,* that the agreement, as alleged, was not a sale of any existing right or credit but was an agreement to place a certain amount of foreign money to the credit of defendant which necessarily related to the future and that, consequently, a demurrer to a separate defense of the Statute of Frauds should be sustained.    (*Legniti* v. *Mechanics & Metals Nat. Bank,* 230 N. Y. 415, distinguished.)

*Equitable Trust Co.* v. *Keene,* 195 App. Div. 384, reversed.

(Argued November 28, 1921;  decided January 10, 1922.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 4, 1921, which affirmed an order of Special Term overruling a demurrer to the first separate defense set up in the answer.

The following question was certified:  " Is the first separate and distinct defense contained in the answer herein sufficient in law upon the face thereof? "

*Winthrop W. Aldrich* and *Hugh L. M. Cole* for appellant.    The transaction involved an agreement by plaintiff to perform a service.    It did not involve a sale or a contract to sell.  (*Katcher* v. *Am. Express Co.,* 109 Atl. Rep. 741; *Beecher* v. *Cosmopolitan Trust Co.,* 131 N. E. Rep. 338; *Strohmeyer & Arpe* v. *Guaranty Trust Co.,* 172 App. Div. 16; *Atlantic Com. Co.* v. *Zimmerman,* 182

App. Div. 862; *Fliker* v. *State Bank*, 84 Misc. Rep. 609; *Bank of British N. A.* v. *Cooper*, 137 U. S. 473; *Wiger* v. *Carr*, 111 N. W. Rep. 657; *Blair* v. *Lynch*, 20 Wkly. Dig. 575; *Beckwith* v. *Brackett*, 97 N. Y. 52.).

*R. Hunter McQuistion, James Lewis Malcolm* and *Henry S. Goodspeed* for respondent. The demurrer to the defense of Statute of Frauds should be overruled. (*Reisfeld* v. *Jacobs*, 107 Misc. Rep. 1.)

HISCOCK, Ch. J.  This appeal involves the question whether an agreement to deliver or make a cable transfer of exchange on London is a contract to sell an existing credit for the amount involved or is an executory contract to place to the credit of the person named the amount in question at the time and place specified.  The distinction between these two views of an agreement for a cable transfer of exchange is narrow and somewhat obscure. The technical and legal consideration involved is the one that if the agreement be regarded as a sale of, or a contract to sell, an existing credit it comes within the Statute of Frauds, and the practical consideration is that if it comes within the provisions of that statute the contract must be evidenced by a memorandum in writing, whereas if it is an agreement to create for the person named a credit for a certain amount of foreign money it is a contract which does not come within the requirements of such statute and may be made by word of mouth and without written memorandum.  We are informed by the briefs that the latter is the common method of conducting transactions for foreign exchange by cable transfer and that a decision holding that an agreement for any such transfer must be evidenced by written memorandum will be productive of much inconvenience.

The question is presented to us by an answer setting up failure to comply with the Statute of Frauds as a defense to this action brought to enforce an agreement

for the transfer by cable of a large amount of foreign exchange. The complaint defines with much preciseness not only the terms of the agreement but the nature of a transaction in foreign exchange by a cable transfer. We are limited in our views and decision by this statement and definition and it is, therefore, possible that such a transaction might be somewhat different in its nature and details than is alleged in this particular complaint although we are inclined to believe that the definition of the transaction as here given cannot be much different than that which would ordinarily be given to such a transfer of exchange.

Turning to the complaint, we find it alleged that the parties " entered into an agreement wherein and whereby plaintiff agreed to deliver to defendant and defendant agreed to take from plaintiff a cable transfer of exchange on London, England, in the amount of twenty thousand pounds sterling    *    *    *. In banking and commercial usage and custom a cable transfer of exchange is a term used to describe the transfer of credits between different points by cable, the person contracting to deliver such exchange contracting that he will make available by cable to the person contracting to take such exchange a credit of the amount specified at the point specified and at the time specified. In entering into the agreement above referred to plaintiff and defendant contracted with reference to such exchange and usage."

As has been said, in determining the question at issue, whether the transaction be a sale of a present credit or a contract to create such credit in the future, we must be controlled by the language which has been quoted. We are not considering checks, drafts, bills of exchange or letters of credit or the principles applicable to any one of these instruments. The fact that the transaction is to be effectuated by cable is of course immaterial; the principles defining the nature of the transaction are not any different than they would be if the transaction was

[232 N. Y. 200]        Opinion, per HISCOCK, Ch. J.        [Jan.,

to be accomplished by letter or special messenger. The cable gives needed speed to the operation but does not change its nature.

When we give to this descriptive language of the complaint a natural interpretation which avoids technicalities and rather finely spun shades of meaning, it seems to be clear that the agreement was not a sale of any existing right or credit but was an agreement to place a certain amount of foreign money to the credit of the defendant, which necessarily related to the future whether measured by the celerity of a cable dispatch or by the delay of a communication by mail. The complaint which was made is to the effect that under the term " cable transfer of exchange," " the person contracting to deliver such exchange " contracts " that he *will make available* by cable to the person contracting to take such exchange a credit of the amount specified at the point specified and at the time specified." In such an agreement there is no guaranty or necessary implication that the contractor has any credit which he is selling or agreeing to sell or that he will place the credit through a third party as correspondent. He can fulfill the terms of such an agreement through his branch office and he can after making the agreement create for himself the credit which will enable him to place to the credit of the other party to the agreement the funds in question. We are unable to see how such an agreement is other than a contract for future action, no matter how speedily accomplished, or how it can be a sale of an existing right. The principles involved ·are not different than those which would be applicable to a contract dealing with ordinary articles of personal property. An agreement transferring to another an existing stock of goods would be a sale; an agreement specially to manufacture or create for another certain articles would be a contract looking to the future. A party defaulting on either contract would, of course, be liable for damages. That liability would not be doubtful

in such a case any more than it is here. We are not discussing that. We are simply concerned with the technical question whether the transaction here involved was a sale within the provisions of the Statute of Frauds so as to require written evidence of its terms and, for the reasons stated, it seems to us that it was not.

. While the particular question before us has been little considered by the courts the views which we are stating are directly and indirectly sustained by the following cases: *Beecher* v. *Cosmopolitan Trust Co.* (131 N. E. Rep. [Mass. 1921] 338); *Katcher* v. *Amer. Express Co.* (109 Atl. Rep. [N. J. 1920] 741); *Wiger* v. *Carr* (131 Wis. 584).

And while not having the authority of a judicial decision, we nevertheless cite in support of what has been said a very thorough and well-considered discussion of the general subject of foreign exchange by Dean Harlan F. Stone of Columbia Law School. (Columbia Law Review, vol. 21, 507.)

Nor is there anything in our recent opinion in *Legniti* v. *Mechanics & Metals National Bank of N. Y.* (230 N. Y. 415), when considered in its entirety, which conflicts with those views. That case involved a question which was absolutely and entirely different than the one we are now considering. A person desiring to secure foreign exchange paid to bankers a certain amount of money in consideration of which he was to obtain credit through cable transfer for a certain amount of lire at Naples, Italy. The bankers having failed to fulfill their contract, the question arose whether the moneys which had been paid to them constituted a trust fund until the credit was established as agreed. There was not even indirectly litigated or considered the question presented on this appeal.

It is true that as a matter of convenience and of common expression the transaction was at times in the discussion referred to as a sale of credit and as one of purchase and sale. But these terms were not used as indicating the

nature of the transaction in respect of the question now before us, the court definitely saying: " Whether the transaction be considered a purchase or an executory contract we need not now determine. So far as this case is concerned, it is a mere matter of nomenclature." (p. 420.)

These views lead us to the conclusion that the orders appealed from should be reversed, the demurrer to the defendant's first and separate defense sustained and the question certified answered in the negative, with costs in all courts.

HOGAN, CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur; POUND, J., absent.

Orders reversed, etc.