OSCAR L. RICHARD et al., Copartners Trading as C. B. RICHARD & COMPANY, Appellants, *v.* AMERICAN UNION BANK, Respondent.

**Contract — banks and banking — breach of executory contract allocated to place where contract to be performed — damages measured by standards of value where breach occurs — contract to establish credit in foreign country in currency of such country — complaint in action to recover damages for delay, measured by decline in market value, properly dismissed — no decline in market value of unit of money in country where it is recognized medium of exchange.**

1. A breach of an executory contract is to be allocated to the place where the contract is to be performed and the damages for such a breach are to be measured by the standards of value which prevail where the breach occurs. (*Hoppe* v. *Russo-Asiatic Bank*, 235 N. Y. 37, distinguished.)

2. The complaint contains two causes of action presenting the same questions of law upon a similar state of facts. It is alleged that plaintiffs had contracts binding upon defendant, whereby defendant was to establish for the benefit of plaintiff in a foreign country a credit in the currency of that country by a certain date; that defendant did not establish such credit at the date agreed upon but did so at a later date, plaintiffs then accepting and taking advantage of such credit; that, in the meantime, the "market value" of the currency of the country had declined, and plaintiffs seek to recover damages for the alleged delay of defendant in establishing such credit measured by the decline in such market value. Since, during the time in question, the foreign money continued to be the same monetary unit, and plaintiffs obtained on the deferred date the same number of such units to which they were entitled on the due date, it is impossible to say that such unit has declined in market value.

3. Plaintiffs have elected to rest their causes of action upon the alleged decline in market value of something which by its very nature could have no market value in the usual sense at the place where the contract was to be carried out. Presumably the plaintiffs when they made a contract to obtain foreign money or credit abroad intended to use it as money in the country where it is the recognized medium of exchange. Fluctuations in the value of money when measured by currency of this or any other country may not affect the use for which

plaintiffs are presumed to have intended it. For damages actually suffered the law afforded other remedy to the plaintiffs. They elected, however, to give to their complaint a form which deprives them of relief which they might otherwise have secured. (*Winter* v. *Am. Aniline Products, Inc.,* 236 N. Y. 199, distinguished.)

*Richard* v. *American Union Bank,* 210 App. Div. 22, affirmed.

(Argued May 6, 1925; decided October 20, 1925.)

APPEAL from a judgment, entered January 30, 1925, upon an order of the Appellate Division of the Supreme Court in the first judicial department, which reversed an order of Special Term denying a motion by defendant for a dismissal of the complaint and granted said motion.

*Abraham Rickman* and *Max Silverstein* for appellants. The rule of damages to be applied is the recovery of the difference expressed in American dollars between the market price of the foreign currency on the contract date for delivery and availability and the date of actual delivery and availability. (*Eq. Trust Co.* v. *Keene,* 232 N. Y. 290; *Melzer* v. *Zimmerman,* 118 Misc. Rep. 407; *Orlik* v. *Wiener Bank Verein,* 204 App. Div. 432; *Gross* v. *Mendel,* 171 App. Div. 237; 225 N. Y. 633; *Societe des Hotels le Touquet Paris-Plage* v. *Cummings,* [1922] 1 K. B. 451; *Pilkington* v. *Commissioners for Claims on France,* 2 Knapp P. C. 7; *Di Ferdinando* v. *Simon, Smits & Company, Ltd.,* [1920] 3 K. B. 409; *Sokoloff* v. *Nat. City Bank,* 239 N. Y. 158; *Hoppe* v. *Russo-Asiatic Bank,* 235 N. Y. 37.) If the transactions described in the complaint constitute " executory " contracts for transmission or transportation, then the rule of damages is the same. (2 Sedgwick on Dam. 623, § 854; *Ward* v. *N. Y. C. R. R. Co.,* 47 N. Y. 29; *Gravenhorst* v. *Zimmerman,* 236 N. Y. 22.) The determination by the Appellate Division in the case at bar that to recover damages for failure to make timely delivery of foreign money special damage must be alleged and proven is wholly erroneous. (*Hoppe* v. *Russo-Asiatic Bank,* 235 N. Y. 37.) The

acceptance by the plaintiffs of delivery of the foreign currency at a date much later than the contract date constitutes no waiver of plaintiffs' right to sue and recover general damages. (*Deeves & Son v. Manhattan L. Ins. Co.*, 195 N. Y. 324; *Crocker-Wheeler Co. v. Varick Realty Co.*, 104 App. Div. 568; *Ripley v. Ætna Ins. Co.*, 30 N. Y. 136; *Stenton v. Jerome*, 54 N. Y. 480; *McKnight v. Dunlop*, 5 N. Y. 537; *New York Rubber Co. v. Rothery*, 107 N. Y. 310; *Chapman v. Fowler*, 132 App. Div. 250; *Reading Hardware Co. v. City of New York*, 129 App. Div. 292; *Mohn v. N. Y. & P. S. C. Co.*, 145 N. Y. Supp. 116.) In any event the judgment and order appealed from must be reversed because the complaint alleges a cause of action for breach of contract. (*Winter v. American Aniline Products, Inc.*, 236 N. Y. 199.)

*Frederick T. Kelsey, Paul H. Welch* and *Charles C. Pearce* for respondent. The complaint fails to state any facts from which any damages sustained by the plaintiff can properly be inferred. (*Loudon v. S. C. Taxing Dist.*, 104 U. S. 771; *Strohmeyer & Arpe Co. v. Guaranty Trust Co.*, 157 N. Y. Supp. 955; *Sokoloff v. Nat. City Bank*, 239 N. Y. 158; *Hoppe v. Russo-Asiatic Bank*, 235 N. Y. 37; *Gross v. Mendel*, 171 App. Div. 237; 225 N. Y. 633.) A cable or wireless transfer transaction constitutes an executory contract as distinguished from a sale. (*Equitable Trust Co. v. Keene*, 232 N. Y. 290; *Gravenhorst v. Zimmerman*, 236 N. Y. 22; *Safian v. Irving National Bank*, 236 N. Y. 513; *Legniti v. Mechanics & Metals Nat. Bank*, 230 N. Y. 415; *Atlantic Com. Co. v. Zimmerman*, 182 App. Div. 862; *Chemical Nat. Bank v. Equitable Trust Co.*, 201 App. Div. 485; *Goepel v. Zimmerman*, 199 App. Div. 915.)

HISCOCK, Ch. J. Judgment has been rendered dismissing the complaint on the ground that it did not set forth a cause of action. It contains two purported causes

of action.  In the first of these, in addition to necessary formal allegations, the complaint alleges that the plaintiffs made a contract with the defendant's predecessor, and whose liabilities the defendant has assumed, whereby in consideration of the payment of a substantial sum of money said bank agreed to establish for the benefit of plaintiff in Bucharest a credit for two million lei by a certain date; that the bank did not establish said credit at said date but did so at a considerably later date, plaintiffs then accepting and taking advantage of the credit; that in the meantime the " market value " of lei had declined and plaintiffs seek to recover damages for the alleged delay of the bank in establishing said credit, measured by said alleged decline in the market value of lei.

The second cause of action involves similar facts, it there being stated that the same bank in consideration of the payment of a certain sum of money agreed to establish for the benefit of plaintiffs with a banking institution in Agram, Jugo Slavia, credit for a certain amount of kronen by a certain date; that it failed to make timely performance of its contract but did thereafter establish said credit which plaintiffs accepted and took advantage of and there is alleged to have been a decline in the market value of kronen for which plaintiffs seek to recover damages.

The two causes of action present precisely similar questions of law and, therefore, in our discussion, merely for convenience, we shall consider the first purported cause of action relating to lei.

The contract alleged, whereby a credit was to be created in plaintiffs' favor for a certain number of lei in Bucharest, was an executory contract which was to be performed at the place where the credit was to be created. (*Equitable Trust Co. of N. Y. v. Keene,* 232 N. Y. 290; *Gravenhorst* v. *Zimmerman,* 236 N. Y. 22.)

The well-established rule is that a breach of an executory

contract is to be allocated to the place where the contract is to be performed and in accordance with this rule the breach of contract occurred in Bucharest.

Another rule is that damages for such a breach are to be measured by the standards of value which prevail where the breach occurs which, in this case, would be Bucharest where lei were the national currency and standard of value. Nothing else than this was decided in *Hoppe* v. *Russo-Asiatic Bank* (235 N. Y. 37), where it was simply held that when a plaintiff was entitled to recover damages for breach of contract which would be primarily expressed in money of the country where the breach occurred, the rate of exchange prevailing at the date of the breach would be adopted as the one by which to convert the foreign money into our domestic money and fix the amount of the judgment in dollars.

So far as we are aware, there is no decision which, under the allegations of this complaint, makes a rule different than those above stated applicable in determining the alleged decline in market value of the lei which plaintiffs were to obtain. It may be that in certain cases we would use the standard of dollars in determining damages on the breach of a contract in the foreign country but we find nothing which warrants that procedure in this case. Therefore, we have the plaintiffs engaged in an attempt to prove that there was a decline in the " market value " of lei in a country where lei were the national currency and the standard by which to determine values in damages. It seems to us that this attempt is impossible of achievement. During all the times in question lei continued to be the same monetary unit and plaintiffs obtained on the deferred date the same number of lei to which they were entitled on the due date and it is impossible to say that lei, measured by lei, had declined in market value.

If it be thought that this decision rests upon somewhat narrow grounds and possibly may not afford the plaintiffs compensation for damages which they have really suffered,

the answer is that we are governed by the allegations of their complaint and that they have elected to attempt to rest their causes of action upon alleged decline in market value of something which by its very nature could have no market value at the place where the contract was to be carried out. Presumably the plaintiffs when they made a contract to obtain foreign money or credit abroad intended to use it as money in the country where it is the recognized medium of exchange. Fluctuations in the value of the money when measured by currency of this or any other country may not affect the use for which plaintiffs are presumed to have intended it. In the absence of special circumstances we will not assume either that the parties contemplated a liability for damages to one intending to use the lei in the markets of Roumania because there might be a depreciation in the value of the lei when measured by our currency, or that in fact such depreciation did cause the plaintiffs any damage. For damages actually suffered the law afforded other remedies to the plaintiffs. On failure of defendant's predecessor to establish the credit as agreed plaintiffs might have rescinded their contract and recovered the money which they had paid for the proposed credit to be established in their favor. Again, on the breach of contract occasioned by the default of defendant's predecessor they might have brought an action for breach of contract and damages in which recovery would have been based on the value of lei at the time of the breach of contract. (*Hoppe* v. *Russo-Asiatic Bank, supra.*) They might have sued to recover special damages if any such they suffered and possibly they would have been entitled to bring an action alleging that on the belated day when the credit was created and they elected to receive the specific number of lei, its value for the purposes contemplated by the parties had so diminished as to cause them actual damage. But they did none of these things. They elected to give to their complaint a form which, as we

think, deprives them of relief which they might otherwise have secured.

We do not overlook the argument which may be made based on the case of *Winter* v. *Am. Aniline Products, Inc.* (236 N. Y. 199), where it was in substance held that in the case of a complaint alleging a breach of contract and ensuing damages, there is no requirement of law that the measure of damages alleged to have been sustained shall be stated in the complaint and if the complaint states facts from which damages can be properly inferred it is sufficient without specifically enumerating the items of damages or the rules of law controlling the damages; that if necessary an amendment of the complaint may be had upon the trial to correct an incorrect theory of damages and that the complaint should not be dismissed where this can be done. While recognizing the application of this rule under many circumstances, it is to be borne in mind, *first*, that in the *Winter* case, in addition to other differentiating circumstances, we were restricted in our consideration to giving answers to specific questions certified which is not the case here, and, *second*, that in our opinion it may be argued with considerable force that the present plaintiffs have debarred themselves of the right to invoke it. The Appellate Division in its decision condemning plaintiffs' complaint as insufficient for the reasons in substance which we have outlined, gave to them the right to serve an amended complaint and of which right they declined to avail themselves. The plain meaning of this seems to be that they are satisfied with the form of complaint and do not desire to give any other form to their claim for relief. Having, therefore, elected to stand on the complaint as it is now written, there is no reason why the court should attempt to give to their pleading some form and theory which they themselves are unwilling to adopt.

For these reasons we think that the judgment should be affirmed, with costs.

LEHMAN, J. (dissenting).   The complaint herein contains allegations that on November 14, 1919, the Nemeth State Bank agreed " to sell the plaintiff two million lei and transmit the same by cable forthwith for the account of these plaintiffs to Banque Marmorosch Blank & Co., Bucharest, Roumania, the same to be payable to said Banque Marmorosch Blank & Co. for the account of the plaintiffs on November 17, 1919," and that the Nemeth State Bank wholly failed and neglected to transmit, pay or deliver the said two million lei by cable to the bank in Roumania until May 27, 1921, and the plaintiffs did not receive notice of such payment until August 17, 1921. Though the complaint does not contain any affirmative allegation that the plaintiffs thereafter availed themselves of the moneys alleged to have been transmitted to the bank in Roumania for their account, the action is brought not for the restitution of the original consideration paid to the Nemeth State Bank, nor for the amount of moneys which the Nemeth State Bank had agreed to " transmit," but for the damages suffered by alleged *delay* on the part of the bank in carrying out the contract.   The complaint assumes belated performance has been made and accepted, and alleges that the " market value of the said two million lei depreciated from November 17, 1919, when the same should have been transmitted and paid and when the same should have been available as aforesaid, to May 27th, 1921, when the same was transmitted and paid as aforesaid."   These allegations are intended to show that the belated performance was less valuable than stipulated performance would have been. For this alleged difference in value the plaintiffs have brought this action against the defendant which has assumed the obligations and liabilities of the Nemeth State Bank, and for convenience we shall hereafter refer to the defendant as if the complaint alleged that it had entered into the original obligation.   The defendant has moved to dismiss the complaint on the ground that it

fails to state facts sufficient to constitute a cause of action.

There is no contention that the complaint does not sufficiently allege a contract on the part of the defendant and a breach of that contract by the defendant's failure to " transmit," or " to establish or effect a credit," for the stipulated number of lei at the stipulated time. Assuming, as we must upon this appeal, that all the facts alleged in the complaint can be established, the plaintiffs at that time undoubtedly had a cause of action against the defendant for the consequent damages. Acceptance of belated performance would not bar the plaintiffs from bringing an action for damages for delay unless such acceptance constituted a waiver of, or an accord and satisfaction for, the earlier breach. The plaintiffs' cause of action is for damages for breach of a contract made in this country and not strictly for a debt payable in foreign money in a foreign country. (*British American Continental Bank — In re Goldzieher & Penso's Claim,* [1922] 2 Chancery, 575. *Same. In re Lisser & Rosenkranz's Claim,* [1923] 1 Chancery, 276.) If the cause of action had arisen in the foreign country for a debt created there and which could at any time be met by payment there in the foreign currency, a different question might arise. (*Societé des Hotels Le Touquet Paris-Plage* v. *Cummings,* [1922] 1 K. B. D. 451.) It is not seriously claimed that from the allegations of the complaint inference arises of waiver of any claim for damages. Mere acceptance of belated performance does not ordinarily give rise as a matter of law to such inference. If such performance was less valuable than the stipulated performance, it does not as matter of law constitute satisfaction of the contract though tendered and accepted for mutual convenience. The real question involved and the only question considered by the courts below is whether the complaint shows that belated performance was in fact less valuable and that the plaintiffs have been damaged in a manner for which the law

can afford redress.   We may upon this appeal properly
dismiss without consideration, or at least postpone con-
sideration, of such questions as whether the plaintiffs even
without setting forth the nature of the damages they
seek, might not, perhaps, recover nominal damages or
interest for the detention of moneys due to them.   No
such questions are raised by the parties, and it is evident
from the pleadings and from plaintiffs' course in this
litigation that they are seeking only the particular kind
of damages which they allege they have suffered and
the court should upon this motion determine whether
they have a cause of action for such damages.

Damages so far as possible should compensate for loss
suffered; they represent ordinarily, in actions upon con-
tract, the value of performance of the contractual obliga-
tion which the promisor has failed to perform.   What in
this case was the nature of the defendant's contractual
obligation?   Allegations of the complaint setting forth
an agreement to sell and transmit foreign moneys have
been quoted above.   There are also allegations that the
defendant had agreed to " establish a credit abroad "
for and in behalf of the plaintiffs.   At Special Term it has
been held that the contract alleged is one for the sale of
foreign currency and that the rule of damages in an action
for delay in delivering foreign currency under a contract
of sale is the same as the rule of damages in an action for
delay in delivering other commodity under similar con-
tracts, viz., the difference between the value of the com-
modity at the time it should have been delivered and the
time it was in fact delivered.   In the Appellate Division
it has been held that the contract alleged is not a contract
of sale but an executory contract to establish a credit in
a foreign country and that for delay in carrying out such
contract only damages special to these plaintiffs and
within the contemplation of the parties may be recovered.
We are agreed that in spite of the allegations of the com-
plaint of a contract of sale, it sufficiently appears that the

contract was executory and that the defendant's obligation was " to place a certain amount of foreign money to the credit of the plaintiffs which necessarily related to the future whether measured by the celerity of a cable dispatch or by the delay of a communication by mail." (*Equitable Trust Co. of N. Y.* v. *Keene,* 232 N. Y. 290; *Gravenhorst* v. *Zimmerman,* 236 N. Y. 22.) In determining the damages which have been suffered by a breach of contract, the technical nature of the contract is of less importance than the practical benefit which would naturally result from the obligation if carried out. Regardless of whether the defendant promised to sell and transmit foreign money to Roumania on November 17, 1919, as alleged in the complaint, or promised to " place to the credit " of the plaintiffs the same amount of foreign moneys on the same date, as we have construed the contract, if the defendant's contract had been carried out the plaintiffs would on the stipulated date have been in control of the foreign moneys. They could have used it to purchase commodies in Roumania, they could have sold it as if it were a commodity for American dollars. The value of the defendant's obligation in either case was the value of the foreign moneys on that date, and immediately upon its breach the plaintiffs could have brought an action for such value.

How would that value be determined? Of course, the contract was to be carried out abroad; the money was to be made available there, and by the defendant's failure to perform the plaintiffs were deprived of its value there. In Roumania the only recognized standard of value is Roumanian money. Here, the only standard of value is the dollar, and we would determine the value of the lei in an action for failure to deliver lei in Roumania on the stipulated date, by converting lei into our money at the rate of exchange prevailing *on the date of the breach.* (*Hoppe* v. *Russo-Asiatic Bank,* 235 N. Y. 37.) In other words, though the plaintiffs would be entitled to the value

of the lei in Roumania and not in America, yet in our courts we must fix its value in our money which is current and is the measure of value not in Roumania but only here, and we fix it on the date when the money should have been paid, delivered or made available as if it were a commodity.

The plaintiffs have not brought such action for damages for total failure to deliver, and apparently have accepted a belated performance by which they have received 2,000,000 lei as agreed, but, as alleged in the complaint, the "market value" of these lei had in the meanwhile much depreciated. If the lei were in full sense a commodity bought and sold in the markets of Roumania, the difference between the value of performance if made at the stipulated time and its value when actually made would be measured by the depreciation in the market value of the lei in Roumania between these dates. It is said, however, that since lei are in Roumania not a commodity but a measure or standard of value they can by their very nature have no *market value in Roumania* which can depreciate, and since the plaintiffs' damages must be fixed in accordance with values in Roumania, the place where the contract was to be performed, it does not appear that plaintiffs have suffered any damages which they can recover in this action. Upon the argument in this court, plaintiffs' counsel practically conceded that from the very nature of money there could be no difference in market value of the lei in Roumania where the lei was not a commodity but a measure of value.

Foreign money is nevertheless not solely a measure of value but at least in many respects must be regarded as a commodity when we attempt to fix its value in relation to our own currency. (Sedgwick on Damages [9th ed.], sections 273, 274; *S. S. Celia* v. *S. S. Volturno*, [1921] 2 Appeal Cases, 544; *British American Continental Bank, Ltd.; In re Credit General Liegeois*, [1922] 2 Chancery, 589.) We fix the value of lei at the time of failure to perform in

accordance with the rate of exchange then prevailing, and it would seem upon parity of reasoning, that when our courts are called upon to determine the value of the belated performance they would use the same method. The difference between the value of stipulated performance and of belated performance so fixed represents the damage suffered by the plaintiffs.

It is said that such damages do not represent the actual value, i. e., the purchasing power of the lei in Roumania. We can measure values, purchasing power and damages only in our currency. If one dollar will purchase ten units of foreign money one year, and twenty units of the same money the next year, then the purchasing value of the foreign unit even in the forum where it passes current has in comparison with the dollar been reduced by one-half, for the dollar which will purchase twenty units of money necessarily also acquires the purchasing power of the same number of units.

It is true that in some respects the purchasing power of depreciated currency in the forum where it is the recognized purchasing medium may not have depreciated in exactly the same proportion as the currency has depreciated when measured in gold or in normal money. The price, measured in local money, of lands and buildings, of labor, of commodities which cannot easily be exported, does not always advance in the same proportion as the local currency has depreciated. For us, however, the price of commodities in foreign as in domestic markets must be measured by our money, and the purchasing power of the local currency must be similarly measured. For us the " market value " of the lei is its price measured in dollars; and since the dollar must of course represent in the markets of Roumania the same purchasing value as the number of lei which it will purchase, the " market value " of the lei even though fixed in New York also determines its purchasing power in Roumania when measured in dollars. Unless we measure the value of the

lei by its market price expressed in dollars, we have no measure we can apply. If in the great disturbance of credit and of currency values due to the World War the measure we use is not always perfect, it must be remembered that damages are assessed against one who has not complied with his contract, and we must use the best measure we have at hand rather than deprive the injured party of remedy.

Foreign exchange represents the method by which the money in one country can be transmitted or made available as money in a foreign country. The defendant agreed to establish a credit at a certain date. The defendant actually established the credit more than a year later. At that time the " market value " of the lei had diminished; *i. e.*, for a dollar more lei could be made available in Roumania as a purchasing medium in the Roumanian markets, and a single lei would purchase commodities of proportionately less value, measured in our currency. The value of performance at the stipulated time was the value of the lei at that time; the value of the delayed performance was the value of the depreciated lei. This difference represents damage which plaintiffs suffered. The difference can be measured only by the market value of the lei expressed in dollars. It is said that perhaps the plaintiffs might have retained the lei in the bank even if the credit had been established and have suffered no real damage. The fact remains that if the credit had been established the plaintiffs could have used the money or allowed it to remain in the bank, and if it had appreciated in value while in the bank the plaintiffs would have gained by such appreciation. On the other hand, assuming as we must the truth of the allegations of the complaint, the defendant has for over a year not complied with its contract, and by the depreciation of the market value of the lei it could perform its contract at less cost to itself measured in dollars, and the plaintiffs have received something of less value measured

1925.] Statement of case. [241 N. Y. 177]

by the same standard. By the terms of the contract between the parties it was the plaintiffs and not the defendant who had acquired the right to speculate in the foreign money.

It must be remembered that on this appeal we pass only upon the allegations of the complaint. We must assume that there has been a total failure on the part of the defendant to perform for over a year; we do not consider the effect of a mere failure to notify the plaintiffs that a credit had been effected, or of any circumstances not set forth in the complaint, which might have bearing on the defendant's obligation or its liability for damages. The allegations of the complaint seem sufficient to constitute a cause of action for damages.

The order should be reversed, with costs in this court and the Appellate Division, and motion denied.

McLAUGHLIN, CRANE and ANDREWS, JJ., concur with HISCOCK, Ch. J.; CARDOZO, J., concurs with LEHMAN, J.; POUND, J., absent.

Judgment affirmed.