HILDEGARDI MOSER and Another, Plaintiffs, *v.* CHARLES O. CORN and Others, Defendants.

Supreme Court, Trial Term, New York County, April 24, 1931.

*Katz & Sommerich* [*Otto C. Sommerich* and *Raymond T. Heilpern* of counsel], for the plaintiffs.

*Duer, Strong & Whitehead* [*Selden Bacon* of counsel], for the defendants.

MULLAN, J. I find that the kronen used by plaintiffs' intestate must be valued as an offset at their value on the day they were withdrawn from the bank, not their value on the day plaintiffs notified defendants of the withdrawal, and not the value to which they subsequently advanced by treaty stabilization. I must assume that the dates of withdrawal are February 20, 1920, and March 29, 1920, for the parties so stipulated. I cannot consider defendants' present assertion that the withdrawals were at a much earlier date when the kronen had a higher value. When plaintiffs' intestate took these 169,000 kronen, he became liable for 169,000 kronen. They were current money in Austria. In measuring kronen in kronen, no account can be taken of the purchasing power of the money, nor of the fluctuation value in money of a different country. These kronen were not a commodity with a special use. (*Richard* v. *American Union Bank*, 241 N. Y. 163; 253 id. 166.) The position taken by defendants that these particular kronen had a value not possessed by other kronen because (had they been allowed to remain on deposit) they eventually would have enhanced in value is untenable. There is no proof that (had they remained on deposit) the bank could not have paid its debt in full by payment of 169,000 kronen at any time on demand. In that case, the fluctuation would have been very similar to the ordinary fluctuation of the purchasing power of any currency, and whatever their purchasing power 169,000 kronen would pay the obligation of plaintiffs' intestate. There seems to have been no total or partial suspension of the right of a depositor in a bank to demand and receive his money. Article 248, subdivision 2, of the treaty refers, I think, only to contracts which could not be carried out on account of the war. There is no proof that this money would have been seized by the officer corresponding to the Alien Property Custodian so as to give effect to the paragraph of article 248 dealing with proceeds of enemy property. The proof, on the contrary, is that the fund was never seized although it remained on deposit during the war. But, even if by a judicial determination it could have been decided that the bank should now, under

the treaty, pay at the pre-war rate of exchange (had the money remained on deposit), it is incredible that either party had that in mind when the money was withdrawn. Long afterward it turned out that perhaps, had the money remained on deposit, the defendants might have substantiated their claim. That is an afterthought. Defendants made no objection to the deposit of the money in the name of plaintiffs' intestate. They made no objection to its withdrawal. They notified plaintiffs' intestate that the reason they could not credit it on the amount due plaintiffs' intestate was that plaintiffs' intestate's claim against defendants was in the hands of the Alien Property Custodian. The language of defendants' letter of March 26, 1920, is not that of a person who realizes that his agent has misused 169,000 kronen of a value of $842, which misuse will cause the principal a loss in excess of $842. It is the language of a principal who assents to the application by the agent of the funds of the principal in his hands, worth $842, to reduce a debt due by the principal to the agent to an extent of $842. There is not a word of reproof or a word concerning any special damage.

There is nothing in this case which demands the abrogation of the general rule that the damages for a conversion shall equal the value of the converted thing at the time and place of conversion. That value was $842, and it is credited by the plaintiffs in the complaint. I direct a verdict for plaintiffs for $5,993.28, with interest from September 22, 1926. I think interest runs in this case from the date of demand, and, while the demand seems to have antedated September 22, 1926, no date is given, so the commencement of the action must be deemed the demand. The counterclaim is dismissed on the merits. Exception to defendants on each ruling. Thirty days' stay of execution after entry of judgment. Sixty days after notice of entry of judgment to make a case.